**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| STANLEY ANDERSON,          ) | |
|          ) | |
|        Plaintiff,     ) | |
|          ) | |
| vs.          ) | CIVIL NO. 11-101-GPM |
|          ) | |
| BOARD OF EDUCATION OF CAHOKIA  ) | |
| SCHOOL DISTRICT NO. 187,    ) | |
|          ) | |
|        Defendant.   ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

This matter is before the Court on a motion for summary judgment brought by Defendant Board of Education of Cahokia School District No. 187 ("the Board") (Doc. 36). Plaintiff Stanley Anderson, who formerly was employed by Cahokia School District No. 187 ("the District") as a custodian, alleges that he was terminated by the Board in retaliation for criticisms of the District's facilities by Anderson's wife, Bernadette Anderson, who is not a party to this case. Mr. Anderson asserts a claim under 42 U.S.C. § 1983 against the Board for an alleged violation of his First Amendment rights. He demands compensatory and punitive damages, as well as attorneys' fees and costs. The Board claims that Mr. Anderson was terminated not for his wife's criticisms of the District's facilities but for poor job performance, namely, repeated failures of tests for drug and alcohol usage, in violation of a collective bargaining agreement ("CBA") between the Board and Mr. Anderson's union and District policy. Mr. Anderson argues in turn that the Board's stated reason for terminating him is pretextual. The Board's motion for summary judgment has been fully briefed by the parties. The Court rules as follows.

To summarize the pertinent factual background of this case, in 2000 Mr. Anderson was hired as a custodian by the District and terminated by the Board, an entity with seven members that is the governing body of the District, on July 12, 2010.  During Mr. Anderson's employment with the District, he was a member of the collective bargaining unit represented by the Service Worker's Council of the Cahokia Federation of Teachers, Local # 1272 ("the Union").  Under the CBA in place between the Union and the Board when Mr. Anderson was terminated, members of the Union agreed to submit to random drug testing.  Additionally, the CBA provided for discipline, up to and including termination, for members of the Union found to be under the influence of drugs or alcohol on the job; the CBA provided also that members of the Union found to be under the influence of alcohol or drugs on the job were not subject to progressive discipline and instead could be terminated immediately.  However, the CBA vested the Board with discretion to place a union member found to have violated the terms of CBA regarding drug and alcohol use on the job on any step of the progressive discipline system that the Board might choose.  Additionally, under the CBA, if the Board exercised its discretion to place a member of the Union who had committed drug or alcohol violations of the terms of the CBA on progressive discipline, the Board nonetheless could terminate the Union member's employment at any time without completing the progressive discipline procedure if the union member committed any further drug- or alcohol-related offenses. Mr. Anderson also was subject during his employment with the District to a "Drug and Alcohol-Free Workplace Policy," under the terms of which District employees were prohibited from using or being under the influence of drugs or alcohol while on the District's premises or performing work for the District.  District employees who violated this policy were subject to discipline, including completion of a drug or alcohol rehabilitation program.

It appears that on April 18, 2001, Mr. Anderson failed a random drug test, testing positive for marijuana.  Mr. Anderson was referred to the District's employee assistance program ("EAP") and required to undergo a course of drug rehabilitation.  On July 5, 2001, a counselor with the EAP advised the District that Mr. Anderson had successfully completed his drug rehabilitation course and could return to work, whereupon Mr. Anderson resumed his work for the District as a custodian. On October 17, 2005, Mr. Anderson failed a random breathalyzer test; three separate breathalyzer tests showed that Mr. Anderson's blood alcohol content was impermissibly high.  As a result of failing the breathalyzer tests, Mr. Anderson was referred to the Board's personnel committee for a determination of the disciplinary action against him that would be recommended to the Board by the personnel committee.  On November 15, 2005, the Board informed Mr. Anderson by letter that he would be suspended from work for ten days without pay as punishment for failing the breathalyzer tests; in the same letter, the Board advised Mr. Anderson that it could have terminated him immediately but instead was giving him one more chance.  The Board cautioned Mr. Anderson that being intoxicated at work was a serious failure to comply with the rules governing his employment and that any further such incidents would result in his termination.  Finally, on May 3, 2010, Mr. Anderson again failed a random breathalyzer test.  Under the CBA between the Board and the Union, if a breathalyzer test is administered to a member of the Union during the first hour of his or her working day, the Union member's blood alcohol content must be less than 0.02%.  If a breathalyzer test is administered to a member of the Union during the second hour of his or her working day, the Union member's blood alcohol content must be less than 0.01%.  However, if a breathalyzer test is administered to a member of the Union after the second hour of his or her working day, then the Union member's blood must be free of any alcohol.  It appears that on

May 3, 2010, Mr. Anderson reported for work at 6:00 a.m.  At 9:23 a.m. a breathalyzer test was administered to Mr. Anderson that showed his blood alcohol content was 0.015%.  On the same day that Mr. Anderson failed his breathalyzer test, three other District employees failed random drug and alcohol tests and received letters informing them that, were they to commit any further violations of the terms of their employment with respect to drugs and alcohol, they would be terminated.  However, unlike in Mr. Anderson's case, for the three other employees who failed drug and alcohol tests on May 3, the offenses at issue were their first.  On June 30, 2010, a disciplinary hearing with respect to Mr. Anderson was conducted by the Board's personnel committee.  On July 12, 2010, the Board terminated Mr. Anderson's employment.  On July 13, 2010, Mr. Anderson was notified by letter of his termination.

On February 4, 2011, Mr. Anderson filed this lawsuit, alleging that his termination had been in retaliation for criticisms of the District's facilities and the Board by his wife.  It appears that on October 28 and October 29, 2010, Mrs. Anderson photographed various facilities of the District.  At approximately the same time that Mrs. Anderson photographed District facilities, she complained to certain District employees, namely, Arnett Harvey and Dr. Tony Brooks, the principal of Wirth School of Choice, about the condition of the District's facilities.  Mrs. Anderson claims that during her October 2009 communication with Harvey, she urged that various District administrators and employees of the District's central office be terminated.  In November 2009, Mrs. Anderson met with Dr. Brooks and advised him that she did not intend to pursue further the complaints about the District's facilities that she had raised.  It appears that Mrs. Anderson never communicated her complaints about the District's facilities to the members of the Board and that Mrs. Anderson has not criticized the District's facilities since January 2010.  Also, at the time Mr. Anderson was

terminated, he was not told by the Board that his termination was related in any way to Mrs. Anderson's criticisms of the District's facilities.

As an initial matter, the Court notes the standard under which it must evaluate a motion for summary judgment. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, generally at any time until thirty days after the close of discovery in a case, "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). The rule provides further that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." *Id.* Under Rule 56, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)-(B). The rule provides also that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With respect to affidavits and declarations, the rule provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In responding to a summary judgment motion, the non-moving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995). A genuine

issue of material fact is not demonstrated by the mere existence of some alleged factual dispute between the parties or by some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 933 (7th Cir. 1997). Rather, a genuine issue of material fact exists only if a fair-minded jury could return a verdict for the non-moving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). In considering a summary judgment motion, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011); *Morfin v. City of E. Chicago*, 349 F.3d 989, 999 (7th Cir. 2003). In evaluating a motion for summary judgment, "the court has one task and one task only:  to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)) (brackets omitted). With the foregoing standard in mind, the Court turns to consideration of the instant summary judgment motion.

"It is by now well established that the government may not arbitrarily silence the constitutionally-protected speech of its employees.  Government workers do not forfeit their First Amendment rights simply by accepting public sector employment." *Wernsing v. Thompson*, 423 F.3d 732, 750 (7th Cir. 2005). To show unlawful retaliation for constitutionally protected speech or conduct, a plaintiff must prove three elements:  first, that he or she engaged in

constitutionally protected speech or conduct; second, that but for the protected speech or conduct a defendant would not have taken an adverse action against the plaintiff; and third, that the plaintiff suffered a deprivation because of the defendant's action. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010); *Gunville v. Walker*, 583 F.3d 979, 983-84 & n.1 (7th Cir. 2009).[1] In order to determine whether speech is constitutionally protected, a court must engage in a two-part inquiry known as the "*Connick-Pickering* test." *See Connick v. Myers*, 461 U.S. 138, 144-45 (1983); *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 568 (1968); *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004); *Coady v. Steil*, 187 F.3d 727, 731 (7th Cir. 1999). Under *Connick*, a court must determine whether the speech or conduct at issue addressed a matter of public concern. *See Connick*, 461 U.S. at 144; *Sullivan*, 360 F.3d at 698-700. If the speech or conduct did involve such a concern, then the court, under the *Pickering* balancing test, must determine whether the government's interest as an employer in providing effective and efficient services outweighs the employee's interest as a citizen in commenting upon the matter of public concern." *Pickering*, 391 U.S. at 568; *Sullivan*, 360 F.3d at 700-03. The determination of whether an employee's speech is constitutionally protected is a question of law for the court. *See Berg v. Hunter*, 854 F.2d 238, 243 (7th Cir. 1988). The Court concludes that Mrs. Anderson's speech regarding the condition of District facilities, for which Mr. Anderson claims he was terminated, was protected speech.

---

1.    The Court recognizes that in cases involving an alleged prior restraint on speech or conduct protected by the First Amendment, it may be misleading to speak of "retaliation," because an infringement of First Amendment rights occurs when a governmental actor deters future protected activity as well as when the actor punishes past speech. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). In this case, however, there is no claim that the Board threatened to punish Mr. Anderson if he or his wife engaged in protected conduct in the future, and therefore the Court will characterize this suit as one for "retaliation."

This Circuit recognizes a claim for relief where an individual has been retaliated against for statements made by a third person. *See, e.g., EEOC v. V & J Foods, Inc.*, 507 F.3d 575, 580-81 (7th Cir. 2007); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998); *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996).[2]  However, in the past controlling

---

2.   The Court notes that, to the extent Mr. Anderson is attempting to frame his claim for relief as one for a violation of his First Amendment right of intimate association, Mr. Anderson's position is not well-founded.  American law "has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984).  "Without precisely identifying every consideration that may underlie this type of constitutional protection, . . . certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State." *Id.* at 618-19.  Importantly,

> Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.  Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.  As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty.  Conversely, an association lacking these qualities – such as a large business enterprise – seems remote from the concerns giving rise to this constitutional protection.  Accordingly, the Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse that would not apply to regulations affecting the choice of one's fellow employees.

*Id.* at 619-20 (citations omitted).  *See also Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987) (in evaluating a claim for interference with the right of intimate association, a court consider factors such as "size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship.").  Thus, a plaintiff claiming a violation of the right of intimate association must show that "she suffered [an adverse employment action] *because* she exercised her right to be married or to stay married to [her spouse]." *Anderson-Free v. Steptoe*, 970 F. Supp. 945, 957 (M.D. Ala. 1997) (emphasis in original).  Here, as will be discussed presently, Mr. Anderson cannot show that his wife's criticisms of the District were the cause, much less the but-for cause, of Mr. Anderson's termination.

authority in this Circuit did not require but-for causation in a case involving alleged retaliation for the exercise of First Amendment rights. *See, e.g., Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)) ("[A] plaintiff who complains that he was retaliated against for exercising his right of free speech need not prove that, had it not been for that exercise, the adverse . . . action that he is charging as retaliation would not have occurred. All he need prove is that his speech was a 'motivating factor' in the [defendant's] decision to take the adverse action."). The Supreme Court of the United States clarified recently that, unless a federal statute provides otherwise, the plaintiff bears the burden of demonstrating but-for causation in suits brought under federal law. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (to prevail in an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the 'but-for' cause of the challenged . . . decision."); *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) ("[T]he decisions which say that a plaintiff need only prove that his speech was a motivating factor in the defendant's decision [to retaliate] do not survive *Gross*[.]").

This Circuit's pre-*Gross* decisions held that, in cases where direct evidence of retaliation is lacking, once a prima facie case of retaliation has been made, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for a challenged act, consistent with the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), used in employment discrimination cases under the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*. *See, e.g., Spiegla v. Hull*, 371 F.3d 928, 943 n.10 (7th Cir. 2004) (quoting *Johnson v. University of*

*Wis.-Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995)) ("[I]n this Circuit 'the causation analysis for a [42 U.S.C.] § 1983 retaliation claim tracks the causation analysis for a Title VII retaliation claim.'"). However, the United States Court of Appeals for the Seventh Circuit noted recently, "[w]hether such a burden shifting analysis survives the Supreme Court's declaration in *Gross* in non-Title VII cases, remains to be seen." *Kodish v. Oakbrook Terrace Fire Prot. Dist*., 604 F.3d 490, 501 (7th Cir. 2010). Some trial courts in this Circuit have taken this statement from *Kodish* to mean that, after *Gross*, the indirect method of proof cannot be used in retaliation cases. *See, e.g., Zitzka v. Village of Westmont*, 743 F. Supp. 2d 887, 915 n.11 (N.D. Ill. 2010) ("We share in the Seventh Circuit's skepticism as to whether the burden-shifting approach retains vitality after *Gross*, because the evidence needed to make out a prima facie case of but-for causation under the direct method will be the same evidence a plaintiff would use to show that a defendant's stated reasons were merely a pretext for the adverse action taken against the plaintiff under the indirect, burden-shifting method."); *King v. Schieferdecker*, No. 08-3213, 2011 WL 3273167, at *14 (C.D. Ill. Aug. 1, 2011) (quoting *Kodish*, 604 F.3d at 501) ("The Seventh Circuit has also held that whether the indirect, burden shifting analysis continues to apply in non-Title VII cases 'remains to be seen.'"). *See also Davis v. Harris*, No. 03-3007, 2006 WL 3321630, at *26 (C.D. Ill. Nov. 14, 2006) ("First Amendment retaliation cannot be established by the indirect method. As such, [a plaintiff] must have some direct evidence of a causal connection between [protected speech or conduct] and [an adverse employment action].").

Recent decisions of the Seventh Circuit Court of Appeals indicate that the burden-shifting method of *McDonnell Douglas* survives in First Amendment retaliation cases after *Gross*. Thus, if a plaintiff makes out the prima facie case of First Amendment retaliation, the burden shifts to the

defendant to show that the same decision would have been made in the absence of the protected speech.  "Once a plaintiff demonstrates that an improper purpose was a motivating factor [for an adverse employment decision], the burden shifts to the defendant to show that the same decision would have been made in the absence of the protected speech.  If the defendant carries that burden, the plaintiff must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that retaliatory animus was the real reason for the decision."  *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011) (citing *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006)).  "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason [for an adverse employment action] is a lie."  *Id.* (citing *Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002)).  *See also Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011) (if a plaintiff shows "a violation of his rights was a sufficient condition of the harm for which he seeks redress" the defendant may "rebut with evidence that the plaintiff's exercise of his constitutional rights though a sufficient condition was not a necessary condition" of the harm or, in other words, the defendant must show that the disciplinary action would have occurred anyway).  A plaintiff can show pretext either (1) directly, with evidence showing that "retaliation was the most likely motive for terminating him," or (2) indirectly, by showing that a defendant's "proffered justifications were not worthy of credence."  *Vukadinovich*, 278 F.3d at 699-700.  To show that the proffered justification was not worthy of credence, a plaintiff must show that the defendant's justification had no basis in fact, was not the real reason for the adverse action, or was insufficient to warrant the adverse action.  *See id.* at 700.  Said differently, the plaintiff must demonstrate that the proffered reasons are, in fact, a lie.  *See id.*

Tuning then to the merits of Mr. Anderson's retaliation claim, the Court finds many defects in the claim.  First, circumstantial evidence of an employer's retaliatory motive, such as the timing of events or the disparate treatment of similar individuals, can sustain a claim of retaliation.  *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (citing *Troupe v. May Dep't Stores Co*., 20 F.3d 734, 736 (7th Cir. 1994)) (circumstantial evidence of retaliation includes "suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.").  However, "suspicious timing alone rarely is sufficient to create a triable issue" of material fact in support of a retaliation claim at the summary judgment stage.  *See Moser v. Indiana Dep't of Corr*., 406 F.3d 895, 905 (7th Cir. 2005).  Evidence that Mrs. Anderson last criticized the District in January 2010, while her husband was not terminated until approximately seven months later, is insufficient to create an inference that Mr. Anderson's termination was in retaliation for his wife's speech. *See Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (the temporal proximity of an employee's filing of a formal discrimination complaint and the issuance of disciplinary letters, standing by itself, did not sufficiently raise an inference of a causal connection between the employee's protected expression and the adverse action for purposes of the employee's retaliation claim; four months elapsed between the employee's filing and his receipt of the first disciplinary letter, and more than three years passed before the employee's receipt of the second letter); *Antonson v. United Armored Servs., Inc*., No. 00 C 4095, 2002 WL 221605, at *3 (N.D. Ill. Feb. 12, 2002) ("Given that four months passed between the protected expression and the failure to promote, and that Antonson provides no additional proof tending to establish a causal nexus between the two events, he has failed to establish

a *prima facie* case of retaliatory failure to promote.").  Second, Mrs. Anderson concedes that she never voiced her criticisms of the District's facilities to any member of the Board.  However, "[i]n order to establish that a defendant retaliated against a plaintiff because of a protected constitutional right, a plaintiff must demonstrate that the defendant knew of . . . the plaintiff's constitutional[ly protected] activities."  *Stagman v. Ryan*, 176 F.3d 986, 999 (7th Cir. 1999).  Accordingly, where there is no proof that a decision-maker responsible for an adverse action against a plaintiff was aware of any protected activity on the plaintiff's part, a retaliation claim must fail.  *See, e.g., Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081-82 (7th Cir. 1992) (affirming the dismissal of a claim by a former employee of a state utility commission who alleged that the new chairman of the commission discharged her in retaliation for her political affiliation where the former employee produced no evidence that the chairman was aware of the former employee's political affiliation).[3]

---

3.    To the extent Mr. Anderson relies upon a so-called "cat's paw" theory of liability, whereby the Board is liable for an unbiased adverse employment action instigated by the impermissible bias of a non-decisionmaking co-worker, namely Dr. Pam Manning, whose appointment as a District superintendent Mrs. Anderson supposedly opposed, this theory fails.  First, "the cat's paw theory is largely confined to cases involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*."  *Beatty v. Olin Corp*., No. 09-cv-795-JPG-SCW, 2011 WL 2712731, at *4 (S.D. Ill. July 13, 2011).  Second, the cat's paw theory applies only "where the party nominally responsible for a decision is, by virtue of [the decision-maker's] role in the company, totally dependent on another employee to supply the information on which to base that decision." *Brewer v. Board of Trs. of Univ. of Ill*., 479 F.3d 908, 918 (7th Cir. 2007).  However, "'where a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker.'"  *Metzger v. Illinois State Police*, 519 F.3d 677, 682 (7th Cir. 2008) (quoting *Brewer*, 479 F.3d at 918).  In this case, in terminating Mr. Anderson the Board did not solely on information furnished by Manning and instead, as discussed, relied upon evidence developed at a disciplinary hearing conducted by the Board's personnel committee, which fully investigated Mr. Anderson's job performance and disciplinary history during his employment with the District.  As such, this Court cannot conclude that the Board was merely Manning's cat's paw.

Finally, Mr. Anderson has failed to show that retaliation was the "but-for" cause of his termination.  Mr. Anderson does not deny that he repeatedly failed random drug and alcohol tests, in violation of the CBA between the Board and Mr. Anderson's Union and the District's "Drug and Alcohol-Free Workplace Policy."  Similarly, Mr. Anderson does not deny that he could have been terminated for any of his three violations of the rules governing his employment concerning use of drugs and alcohol at the workplace or being under the influence of drugs or alcohol at the workplace, and he concedes that in fact he was disciplined more leniently than other District employees who committed similar infractions.  In sum, Mr. Anderson cannot show that the reason for his termination was pretextual or that his proposed reason for his termination, his wife's criticism of the District's school facilities, was the but-for cause of his termination.  "[T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322-23 (quotation omitted).  *See also Green v. Whiteco Indus., Inc*., 17 F.3d 199, 201 (7th Cir. 1994) (quoting *Celotex Corp*., 477 U.S. at 325) ("On a motion for summary judgment, the moving party has the burden of demonstrating that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law.  This burden 'may be discharged by

'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (citation omitted).  Here, the record discloses no evidence to support a reasonable inference of but-for causation as to Mr. Anderson's retaliation claim, and therefore the claim will be dismissed.

To conclude, the Board's motion for summary judgment (Doc. 36) is **GRANTED**, and this action is **DISMISSED with prejudice**.  All other pending motions in this case (Doc. 49, Doc. 51, Doc. 53, Doc. 55, Doc. 56, Doc. 59, and Doc. 61) are **DENIED as moot**.  The Clerk of Court will enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  February 14, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge